CARL H. WADELL ET AL. *v.* BOARD OF ZONING APPEALS
OF THE CITY OF NEW HAVEN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

1

Argued May 3—decided August 9, 1949.

*Robert J. Woodruff,* with whom was *Arthur Klein,* for the appellants (plaintiffs).

*Joseph M. Brandon,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellee (defendant St. Aedan's Church Corporation).

*Alfred F. Celentano,* assistant corporation counsel, with whom, on the brief, were *George DiCenzo,* corporation counsel, and *William L. Beers,* assistant corporation counsel, appeared for the appellee (defendant board).

MALTBIE, C. J.   The plaintiffs appealed to the Court of Common Pleas from the grant of a variation under the zoning ordinance of New Haven, and from a judgment for the defendant board in that court have appealed to this court.   The undisputed facts show this general situation: St. Aedan's Church owns a tract of land in a residence zone in the city on which stand a church and a rectory.   It desires to erect a school on the property, a permitted use in the zone.   The ordinance, however, contains a provision that in such zones, in case of a building other than a residence, there shall be side yards at least twenty feet in width, if, as is the situation with regard to the proposed school, the building is not over forty feet in height.   New Haven Zoning Ordinance § 1024.   The ordinance also contains a provision: "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any provision of this Ordinance, or where the effect of the application of the Ordinance is arbitrary, the Board of Zoning Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done."   § 1033 (7). The southerly side of the school, if erected as proposed, would encroach upon the twenty-foot side yard required by the ordinance.   The board granted a variation which would permit this encroachment.

We find some difficulty in dealing with the issues in this case because of the way it is presented to us.   Section 429 of the 1930 Revision of the General Statutes, in effect when the appeal to the court was taken and heard (Rev. 1949, § 844), contained this provision concerning appeals to the courts from zoning boards: "The court, upon such appeal, shall review the proceedings of said board and, if, upon the hearing of such appeal,

it shall appear to the court that testimony is necessary for the equitable disposition of the appeal, it may take evidence" or refer the matter to a referee or committee. Where, as occurred in this case, the board states the reasons for its decision and there is available a transcript of the evidence before it, both constitute the "proceedings" before the board, and the conclusions reached may be reviewed to determine whether they find reasonable support in the evidence. If the trial court hears testimony, it should find any additional facts proven before it material to the just disposition of the appeal; but its finding should be confined to facts established by the evidence offered to it. In such a case the finding should contain by quotation or reference the reasons for the decision of the board as stated by it and, if necessary to determine the issues, the testimony offered before it, and a statement of such additional facts as are proven by the evidence offered in court. In this case the trial court made a rather lengthy finding, much of which has no basis other than the transcript of the testimony taken before the board. As, however, we have before us the statement of the board as to its reasons for granting the variation, and the transcript of the testimony before it, and can from the finding ascertain the additional facts found by the trial court, we can determine the essential issues.

The property of the church is bounded northerly by Fountain Street, easterly by Alden Avenue and westerly by McKinley Avenue, and the church stands at the corner of McKinley Avenue and Fountain Street and fronts on the latter. The rectory is on the corner of Fountain and Alden. The property is bounded on the south, for a distance of about 156 feet from McKinley Avenue, by the land of the plaintiff Wadell on which stands his house. The school, if erected as planned, would be about 75 feet across the front, which

would be towards McKinley Avenue; it would be about 110 feet long from east to west; the northerly end would be within about six feet of the rear of the church, and the southerly end would average about nine feet from the boundary between the church property and that of Wadell.

The reasons stated in the records of the board for granting the encroachment were: The school would conform in architecture, materials and workmanship to the church building and would not detract from the appearance of buildings on McKinley Avenue and in the neighborhood; pupils would not use the main entrance to the building but would enter in the rear by a walk from McKinley Avenue; the play yard would front on Alden Avenue, which would be better than to have it on McKinley Avenue; it is quite necessary for the welfare of the pupils to have larger rooms, in keeping with modern requirements for schools; the building as planned would cost about $250,000 and it would be a hardship to compel the church to construct the building with rooms twenty-four feet in size; there are tall trees along the boundary between the church property and that of Wadell which shut off the light to the latter; and there is a driveway to his property along the boundary, so that there will be considerable space between his home and the school. These findings all have substantial support in the testimony offered before the board. In addition, there was uncontradicted evidence that the front of the school would be forty feet back from the street line on McKinley Avenue, in line with the front of Wadell's house, which would be next to it on the south; that the plans of the school provide for eight classrooms in which about 300 pupils would be accommodated, but it is intended at some future time to extend the building easterly towards Alden Avenue so as to have sixteen rooms; that as

now planned each room would have a dimension of twenty-eight feet, which is four feet less than the recognized standard size for schoolrooms, and, unless the encroachment was permitted, two of the rooms would have to be diminished by four feet more; that the trees along the boundary between the properties stand for the most part on the property of the church; and that Wadell's driveway is fourteen or fifteen feet wide.

Aside from testimony as to the proceedings before the board, the only evidence offered before the court was to the effect that there was room to erect the proposed school fronting on Fountain Street between the church and the rectory or on land owned by the church on Alden Avenue. This land has a frontage of 175 feet; it abuts in part, on its westerly side, on the tract where the church and rectory now stand; but it is not continuous on Alden Avenue with the other property of the church to the north because of an intervening house and lot owned by another person. On this property of the church on Alden Avenue stand three houses, one of which is now used for a school and another is being prepared for such use. It is upon the fact that the school could be placed in one or the other of these locations that the plaintiffs principally rely. The trial court has, however, made the following findings, which have adequate support in the evidence. With reference to the first suggested location, the distance between the church and the rectory is about eighty-seven feet; this would leave open, if the school were built, only a space of twelve feet; the high buildings on both sides would interfere with light and ventilation for the school; the school would extend backward to about five feet from the rear of the lot on Alden Avenue not owned by the church; and this would result in a violation of a provision of the ordinance concerning rear yards. With reference to the second location, the trial

court states in its finding the evident fact that the erection of the school would necessarily involve a destruction of the buildings on it and a consequent interruption of the school now being conducted in them during the time required for building.

In *Stavola* v. *Bulkeley,* 134 Conn. 186, 190, 56 A. 2d 645, we said: "To justify a variation under such a provision [as that in the ordinance before us] in a zoning ordinance, it must appear that the change will not substantially affect the comprehensive plan of zoning in the municipality and that adherence to the strict letter of the ordinance will cause difficulties and hardships the imposition of which on the petitioner is unnecessary to carry out the general purpose of the plan." See also *Delaney* v. *Zoning Board of Appeals,* 134 Conn. 240, 244, 56 A. 2d 647. In the case before us the church has a right to erect a school upon its land. The only effect of granting the variance is to reduce the side yard from the required twenty feet to about nine feet. That would leave, however, something more than twenty-four feet between the school and Wadell's house, which apparently does not have a twenty-foot side yard. The board could reasonably conclude, as it did, that it would not conduce to the welfare of pupils in the school to diminish the size of the rooms, as would be necessary if there was no encroachment on the side yard. The placing of the building elsewhere on the property of the church would be attended with practical difficulties and unfortunate results. The narrowing of the side yard might well have been regarded by the board as having little effect upon the general plan of zoning in the district. The trial court did not err in holding that the board did not exceed its proper discretion in granting the variation. See *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 237, 10 A. 2d 691; *DeFelice* v. *Zoning*

*Board of Appeals,* 130 Conn. 156, 164, 32 A. 2d 635; *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 623, 53 A. 2d 659.

There remains to consider one procedural matter. After the church had completed its offer of evidence before the board, the attorney for the plaintiffs asked to cross-examine the principal witness called by it; permission to do so was refused; and the president of the board stated, "We don't permit that." Thereafter, the president stated, "If you wish to ask questions ask them through the board." At the hearing before the court, he explained that it was the practice of the board not to permit any cross-examination of witnesses and gave as the reason that experience had shown that to do so brought about personal recriminations, finally ending in a row and usually bringing out things which had no bearing on the case. In *Fordiani's Petition,* 99 Conn. 551, 121 A. 796, we said (p. 561), "Cross-examination is the greatest aid to the ascertainment of the truth which the advocate possesses," and we quoted from 1 Greenleaf, Evidence (14th Ed.) § 446: "The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests, which the law has devised for the discovery of truth." See *Bishop* v. *Copp,* 96 Conn. 571, 575, 114 A. 682. To be sure, we were referring in that case to procedure in courts, but a zoning board acts in a quasi-judicial capacity; it often deals with important property interests; and a denial of a right to cross-examine may easily lead to the acceptance of testimony at its face value when its lack of credibility or the necessity for accepting it only with qualifications can be shown by cross-examination. We quote from *Interstate Commerce Commission* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 93, 33 S. Ct. 185, 57 L. Ed. 431: "The Commission is an administrative body

and, even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25 [24 S. Ct. 563, 48 L. Ed. 860]. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown but presumptively sufficient information to support the finding." See *Matter of New York Title & Mortgage Co.,* 277 N. Y. 66, 81, 13 N. E. 2d 41; *Lindsey* v. *Public Utilities Commission,* 111 Ohio St. 6, 21, 144 N. E. 729. "The provision for a hearing implies that the applicant is entitled to an opportunity to hear all the evidence, and examine or cross-examine the witnesses as in other cases." *Saltzman* v. *Stromberg-Carlson Telephone Mfg. Co.,* 46 F. 2d 612, 614.

In those cases where it has been held that there was no right to cross-examine witnesses before an administrative board, it was not acting in such a quasi-judicial capacity as was the board in the present case. See *Origet* v. *Hedden,* 155 U. S. 228, 236, 15 S. Ct. 92, 39 L. Ed. 130; *Norwegian Nitrogen Products Co.* v. *United*

*States,* 288 U. S. 294, 306, 53 S. Ct. 350, 77 L. Ed. 796. If the experience of the board in allowing cross-examination produced the effect stated by its president, the remedy is in the exercise by the board of a proper control over proceedings before it, not in the denial of a right to which parties appearing before it are entitled. The practice of the board of denying an opportunity for cross-examination cannot be sanctioned. A requirement of the board that attorneys desiring to cross-examine witnesses should ask questions through it would place an unjustifiable restriction upon their rights.

It does not follow, however, that the board's ruling in this case requires that the appeal to the court be sustained. It is axiomatic that cross-examination is only permissible to the extent that it is relevant to the examination in chief. *Finch* v. *Weiner,* 109 Conn. 616, 619, 145 A. 31. In their brief the plaintiffs claim that the purpose of the cross-examination they sought was to show that the school could be placed in other locations on the property of the church, and that placing it in close juxtaposition to the church, as proposed, would destroy the present symmetry and beauty of the buildings along McKinley Avenue. Cross-examination for the first purpose stated would not have been germane to any testimony of the witness on direct, and the claim for the second purpose loses its force in view of the statement by the plaintiffs' attorney to the board that the plaintiffs did not object to the erection of the school provided it was kept within the restrictions of the ordinance. We cannot find that the board committed harmful error in this case in refusing to permit cross-examination of the witness.

There is no error.

In this opinion JENNINGS, ELLS and DICKENSON, Js., concurred.

Brown, J. (dissenting). The board of zoning appeals granted the church permission to encroach eleven feet three inches upon the side-yard space specified in the zoning ordinance, by reason of "practical difficulties or unnecessary hardships." It is my conclusion that upon the record before us this action of the board is not sustainable. *Delaney* v. *Zoning Board of Appeals,* 134 Conn. 240, 243, 56 A. 2d 647. The maps and photographs in evidence showing the location and appearance of the existing structures in the immediate neighborhood along McKinley Avenue, considered in connection with the plan showing the location and dimensions of the school building as proposed, graphically portray the radical departure from the spacing provisions of the ordinance, as heretofore observed, which the permission granted involves. The only power which the board has to vary the spacing provision is prescribed in § 1033 (7) of the ordinance. This provides that, in a specific case where there are practical difficulties or unnecessary hardships incident to strict compliance, it may accord this relief, but only in harmony with the general purpose and intent of the ordinance to secure the general welfare and do substantial justice.

The significant fact in this case is that, while the church seeks to place the proposed school on that part of its land which fronts on McKinley Avenue and so requires a variance, it has ample room to locate it on Alden Avenue without either violating the ordinance or necessitating any variance under it. That this course would call for the removal of frame structures from that area, involving some possible financial sacrifice, at a date earlier than might otherwise be necessary, is not a controlling fact. In considering whether the difficulty or hardship to the church would be such that the board could grant a variance which would be

in harmony with the general purpose and intent of the ordinance to secure the general welfare and do substantial justice, the board was bound to take a broader view than the apparent monetary distress of the owner. Otherwise there would be no occasion for any zoning law. *Thayer* v. *Board of Appeals,* 114 Conn. 15, 22, 157 A. 273; *Delaney* v. *Zoning Board of Appeals,* supra. When an owner's land affords two possible locations for a proposed building, one of which is adequate and can be utilized without obtaining a variance from the zoning board, and the other is inadequate unless a variance is procured, manifestly the mere fact that the owner prefers to build on the latter instead of the former does not of itself constitute a hardship which affords reason for granting the variance. The statements by counsel for the church as to the dire consequences to it and the city which would result from the necessity of providing interim schooling for pupils now temporarily accommodated in one of the frame structures, should it become necessary to utilize the Alden Avenue instead of the McKinley Avenue location, were not evidence which the board could consider. *Celentano* v. *Zoning Board of Appeals,* 135 Conn. 16, 18, 60 A. 2d 510.

I therefore conclude that the board upon this record could not reasonably find that this was one of those "rare instances", which under "exceptional circumstances" warrant the relaxation of the general restrictions established by a zoning ordinance. *Grady* v. *Katz,* 124 Conn. 525, 529, 1 A. 2d 137. It follows that, in my judgment, the court erred in dismissing the appeal.