[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is an appeal from the decision of the Torrington Inland-Wetlands Commission (hereinafter "Commission"), which issued a permit to conduct regulated activities in a wetland. This appeal draws its validity under Sec. 22a-43 of the General Statutes. A brief chronology of the facts which generated this litigation is appropriate. On November 12, 1987, Eugene F. Green (hereinafter "applicant") applied to the Commission for a permit to conduct regulated activities on property which he owned. The appellant is an abutting landowner. The Commission held hearings on January 12 and February 16 and on March 27, 1988, it granted the application after impressing certain conditions thereon. On April 22 of that same year, an appeal was taken. The Commission filed a motion to dismiss for lack of subject matter jurisdiction asserting that the appellant failed to name and serve the applicant as a party respondent. The Court, Pickett, J., dismissed the appeal.
On December 2, 1988, the appellant appealed that judgment of dismissal and the Appellate Court, in due course, set aside the judgment of dismissal and remanded for further proceedings. The Commission petitioned for certification to the Supreme Court on September 28, 1989, which petition was denied on October 25, 1989. The applicant successfully moved to intervene and be made a party in this proceeding on March 13, 1990.
Aggrievement is a jurisdictional prerequisite to maintaining an appeal. An abutting landowner is an aggrieved person within the meaning of the statute. See Sec. 22a-43 of the General Statutes; Klug v. Inland-Wetlands Commission,19 Conn. App. 713, 715.
"The grant of authority allowing judicial review of agency action includes the authority to review the propriety of the standards relied upon by the defendant in effecting its delegated duties. . . . It is fundamental that an agency must act within its statutory mandate and that it has no authority to modify, abridge or otherwise change the statutory provisions under which it acquires authority." Harrison v. Commissioner, 204 Conn. 672, 680; Phelps Dodge Copper Products Co. v. Groppo, 204 Conn. 122, 128.
Sec. 22a-42a (d) requires that an inland wet lands agency which grants a permit for any regulated activity shall consider the factors set forth in section 22a-41, and further requires that the agency state upon the record the reason for its decision. CT Page 2037
The factors which subsections (a)(1) through (a)(6) of Sec. 22a-41 declare are: (1) the environmental impact of the proposed action; (2) the alternatives to the proposed action; (3) the relationship between short-term uses of the environment and the maintenance and enhancement of long term productivity; (4) irreversible and irretrievable commitments of resources which would be involved in the proposed activity; (5) the character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and, (6) the suitability or unsuitability of such activity to the area for which it is proposed.
Subsection (b) of Sec. 22a-41 mandates that in the case of an application which received a public hearing, a permit shall not issue unless the Commission finds that a feasible and prudent alternative does not exist. In making that finding, the Commission shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor must be stated on the record.
"The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. See Daviau v. Planning Commission, 174 Conn. 354, 358, 387 A.2d 562 (1978); Nicoli v. Planning Zoning Commission, 171 Conn. 89, 94,368 A.2d 24 (1976); First Hartford Realty Corporation v. Plan 
Zoning Commission, 165 Conn. 533, 543, 338 A.2d 490 (1973); see Parks v. Planning Zoning Commission, 178 Conn. 657,662-63, 425 A.2d 100 (1979). The evidence, however, to support any such reason must be substantial: `[t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency.' Feinson v. Conservation Commission, 180 Conn. 421,425-26, 429 A.2d 910 (1980), quoting Lawrence v. Kozlowski, 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066
(1977), and cases there cited. `This so-called substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' . . . `The `substantial evidence' rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in CT Page 2038 its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of ` weight of the evidence' or `clearly erroneous' action. . . .' (Citations omitted.) Lawrence C. Kozlowski, supra, 713-14; Persico v. Maher, 191 Conn. 384, 409, 465 A.2d 308 (1983). `The reviewing court must take into account [that there is] contradictory evidence in the record . . . but `the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .' American Textile Manufacturers Institute, Inc. v. Donovan,452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981), quoting Consolo v. Federal Maritime Commission, supra." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,539-542.
The Commission has failed to state its finding much less its reasons for approving the application for the permit in issue. That failure, however, is insufficient to sustain this appeal. It merely triggers the requirement that the reviewing court search the record. Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 611. The question remaining is whether an examination of the record by the reviewing court may overcome the agency's failure to make the statutorily required factual finding. The determination of factual issues is within the province of the agency. See Huck v. Inland Wetlands Watercourses Agency, supra, 541. Consequently, the Commission's failure to make findings of fact is not subject to curative action by the reviewing court.
The appellant contends that the Commission failed to make the "no feasible and prudent alternative" finding required by Sec. 22a-41 (b). She cites A.D.A.M. Land Development Corporation v. Conservation Commission, 21 Conn. App. 122
(hereinafter "ADAM") as authority for the proposition that the failure to make the feasibility finding mandates the case be remanded to the Commission for such a finding. The Commission in ADAM expressed its finding where as in the instant case the Commission did not. In ADAM, the factual scenario began when the applicant applied for a permit to construct two roads across a wet land. The Commission denied the application after it was "unable to find that feasible and prudent alternatives to the proposed CT Page 2039 roadway did not exist." The court, on review of the record, found that the Commission had considered alternatives to only one of the two road crossings. The appeal was sustained as a result of the failure of the Commission to separately consider the feasibility of the second road crossing.
This court is satisfied that a Commission is obligated to make a finding with regard to "feasible and prudent alternatives." This conclusion is supported by the legislative history of Sec. 22a-41 (b). In the Senate debate on Sec. 4 of Public Act 87-533, which amended Sec. 22a-41 by adding the feasible and prudent alternative language, Senator Meotti described the purpose of the amendment as follows: "I'd like to just point out a few of the major provisions of this omnibus legislation. . . . Secondly, the bill establishes a standard, an explicit standard for the first time for the DEP and local inland wetland agencies' decisions, that they must find that a feasible and prudent alternative to the intrusion of the wetlands does not exist. This standard which we believe has been used by many agencies and by the department and goes a long way towards codifying protection of wetlands so that they will not be intruded upon as long as a feasible and prudent alternative to the intrusion on the wetland exists. . . ." Senate Debate, 30 S. Proc., Pt. 9, 1987 Sess., p. 3115. Representative Mushinsky echoed this purpose in presenting this bill to the House of Representatives. House Debate, 30 H.R. Proc., Pt. 30, 1987 Sess., pp. 10227-28.
A review of the record discloses that while alternatives to certain aspects of the regulated activities were considered by the Commission, the Commission failed to make the "no feasible and prudent alternative" finding as required by the statute. This court is constrained by the Commission's failure to make the subject finding to order a remand for that specific purpose.
ADAM, to some degree, has muddied the waters when considered with the statute and the legislative history on the question of whether Sec. 22a-41 (b) requires that the commission make a no feasible alternative finding for the project as a whole or for each of the regulated activities which the application requests. The fact that the ADAM court upheld the reviewing court's analysis suggests that each separately regulated element of a project must be considered sui generis with regard to feasible and prudent alternatives. Until such time as the Appellate Courts address this issue, each regulated element should be so considered.
This case, not unlike so many others, presents an CT Page 2040 issue of post-hearing ex parte communication. While proceedings before zoning and planning boards and Commissions are informal and are conducted without regard to the strict rules of evidence, nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. The commission cannot properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. Pizzola v. Planning Zoning Commission,167 Conn. 202, 207; Wadell v. Board of Zoning Appeals,136 Conn. 1, 9. Planning and Zoning Commissions are entitled to technical and professional assistance in matters that are beyond their expertise, and that such assistance may be rendered in executive session. However, the use of such assistance cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal. Blaker v. Planning Zoning Commission, 212 Conn. 471,477-78; Pizzola v. Planning Zoning Commission, supra, 207-208.
The Blaker court continued by saying that the party challenging the action of the Commission bears the burden of proving that the Commission acted arbitrarily and illegally. Once the challenging party has met that burden, then the burden shifts to the agency to prove that no prejudice has resulted from the prohibited ex parte communication. "[O]nce it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision." Blaker v. Planning Zoning Commission, supra, 480. That court specifically rejected the view that the occurrence of ex parte communications necessarily rendered a commission's decision void as appellant here claims and cited Martone v. Lensink,207 Conn. 296, 306 as secondary authority for that proposition. It thereupon remanded the case to the trial court for a hearing so that defendant commission had an opportunity to rebut the inference of prejudice created by the acceptance of ex parte communications.
This case is now before the trial court and the issue of prejudice should be determined by this court. The CT Page 2041 appellant in her memorandum of law claims that the Record, Item Fourteen (14) and Fifteen (15) represent post-hearing ex parte communications submitted to the Commission and used by the Commission in rendering its decision. Item Fourteen (14) of the record is a letter dated February 19, 1988, submitted to one Roulette, city engineer, by Loureiro Engineering Associates at the request of the applicant Green, responding to the eight recommendations presented by the Marsh Study.[1] Item Fifteen (15) of the Record is a letter dated February 23, 1988, submitted to the Torrington Inland-Wetlands Commission, the applicant's attorney, discussing setbacks and conservation restrictions.
The minutes of the Commission's meeting of March 22, 1988 indicate that the Commission considered these two letters in reaching its decision granting the permit in question.[2] Item Fourteen (14) and Fifteen (15) are ex parte communications which were received by the Commission post-hearing and as such the appellant has met her burden of demonstration and has created a presumption of prejudice. In order to rebut an inference of prejudice, the proponent of the agency's action must demonstrate that the ex parte communication did not adversely effect the disposition of the plaintiff's case. Martone v. Lensink, supra, 305.
In the context of ex parte communications, the appropriate inquiry regarding prejudice to the appellant's right must focus on whether the agency's decision-making process was irrevocably tainted so as to make the ultimate judgment of the agency unfair. PATCO v. FLRA, 685 F.2d 547,564-65. Martone v. Lensink, supra, 305, 306. "`[N]ot all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown.'" Murach v. Planning 
Zoning Commission, 196 Conn. 192, 205; Patenaude v. Meredith, 118 N.H. 616, 621 392 A.2d 582. A determination of prejudice to the appellant necessarily involves consideration of the role the ex parte communication played in the agency's decision. A conclusion that the Commission's decision was amply supported by the evidence in the record may be dispositive of the issue of prejudice. Martone v. Lensink, supra, 306 n. 6.
The record reflects that the letters at issue cannot be considered pre judicial since they present no new or additional evidence and as such have not deprived the appellant of the fair opportunity to examine the information presented. Item Fourteen (14) of the Record (the letter from Laureiro Engineering Associates to the city engineer in response to the Marsh Study) indicates that the purpose of CT Page 2042 the second hearing held on February 16, 1988 was to allow the opponents of the project to submit an independent review or study of the proposed project.[3] The independent study by Mr. Marsh was not submitted to the Commission or applicant until the second hearing.[4] The late submission of the independent study deprived the applicant of an opportunity to review the plans before the second hearing so that applicant would have a reasonable opportunity to review and respond.[5]
The independent study recommended that the Commission needed more data from the applicant before it could reach its decision.[6] The Commission discussed whether to continue the hearing so that the applicant could respond to the recommendation of the independent study noting, however, that time was running out.[7]
The applicant responded to the continuance offer by saying through counsel that "[t]he question I think we have is with the information that we have not seen or heard until this evening, which is basically a list of about seven points with respect to the engineering data. Most of it was requests for information, which information is available; and we would be willing to make it available. . . . If this Commission feels that it can act based on Jerry Roulette's input and based on our providing the information that's been requested tonight, and with perhaps further discussion with Mr. Marsh, if necessary, then I think we could probably close the hearing tonight. On the other hand, if the Commission feels that any response to Mr. Marsh's report should occur at a public hearing, in that case then I think we could have to continue the public hearing to give us a fair opportunity to respond." Finally, the Commission concluded that the submission of the requested information and the opportunity to respond did not necessitate another hearing but could be made by submission to engineering.[8] As the record indicates, the letter from Loureier Engineering Associates (Record, Item Fourteen (14)) was simply the applicant's response to the recommendations presented in Marsh's independent study. An examination of the substance of the responses contained in the letter indicated that the letter added no new or additional evidence.[9]
The record also indicates that the appellant was not deprived of the necessary safeguards or a fair opportunity to respond.[10] The independent study was presented by the opponents in response to the applicant's plan and presentation.[11] The independent study and presentation by Marsh recommended that the Commission receive additional information on the project.[12] It is also significant that the applicant's attorney was present at the February 16, 1988 hearing and had ample opportunity to object or comment on the CT Page 2043 procedure adopted by the Commission.[13] The record demonstrates that the submission, Item Fourteen (14), the Laureiro Engineering Association letter, could not have adversely affected the disposition of the appellant's case. This court finds that the record rebuts the presumption of prejudice created by post-hearing ex parte submission of Record, Item Fourteen (14). (Laureiro Engineering Association letter.)
Item Fifteen (15), the letter from the applicant's attorney to the Commission discusses applicant's willingness to accept setback limitations, their location on the subdivision map, a conservation restriction, and a request to consider this willingness in determining whether or not to issue the permit.[14] The plans for setbacks, deed restrictions, conservation easements and buffer zone were presented to the Commission and discussed.[15] Again, the appellant's attorney was present through these various discussions and as such had the opportunity to respond to and participate and present his client's proposition.[16]
The appellant presented the independent study which recommended that "[c]onsideration should be given to the creation of a conservation easement to be shown on the filed subdivision map. This conservation easement would then become part of the deeds to the lots and serve as public notice that no construction activity is allowed within this area."[17] The applicant described his willingness to provide whatever restriction the Commission thought necessary.[18]
From this examination of the record, it is clear that the topic of setbacks and conservation easements was discussed,[19] and that the applicant stated his willingness to comply with such restrictions. The letter in issue simply reiterates that posture. Most significantly, the appellant's position with regard to this subject was presented at the hearing at which time she had a fair opportunity to examine the evidence. There is no question that she was provided with the necessary safeguards of a fair hearing.
This factual predicate establishes that the applicant's position as set forth in Record, Item Fifteen (15) was fully presented to the Commission prior to the submission of the letter. The Commission's decision is amply supported by evidence in the Record without reference to Record, Item Fifteen (15). The Record rebuts the presumption of prejudice created by the ex parte submission and clearly supports this Court's finding that the submission could not have adversely affected the disposition of the appellant. CT Page 2044
In speaking to the question of whether or not the Commission's decision to grant the applicant's permit for the regulated activities is supported by substantial evidence, the court finds itself without the necessary determination of "feasible and prudent alternative findings" by the Commission at this time. It therefore declines to act on this question at this time and leaves it to another day. The appellant's premise asserting breach of public trust, compromise of the policy of the State frustrating the purpose of the Inland Wetlands and Watercourses Act is unsupported by authority or factual allegations and, as such, she has failed to meet her burden of proof. She cannot prevail on that hypothesis.
The appellant's memorandum (brief) correctly states the purpose of the Inland Wetlands and Watercourses Act (IWWA). She continues by claiming that the Commission's grant of the permit is violation of the purpose of said Act. She fails, however, to describe how or why the grant of that permit to conduct the regulated activities constitutes such a violation and cites no authority for that proposition. Once again, she has not met her burden of proof and thus this appeal cannot be sustained upon this argument.
For all of the foregoing reasons, the application is remanded to the Commission for further proceedings addressing each and every one of the criteria in terms of declaring a finding on the mandate of no feasible and prudent alternative in accordance with Sec. 22a-41 (b) of the General Statutes. Judgment may enter accordingly.
Moraghan, J.
END NOTES