[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
It is to the ancient Romans that we owe the maxim "Interest reipublicae ut sit finis litium." This is the latest way station on a long path of litigation between the parties. Whatever the interests of the state may be to see that litigation comes to an CT Page 4253 end, these lawsuits before the court are but another phase in a legal controversy which has developed a life of its own.
In two separate appeals consolidated for trial, the plaintiffs, Timber Trails Associates and Tessa Pascarella, pursuant to section 8-8 of the General Statutes, have appealed from the Town of Sherman Planning and Zoning Commission's two attempts to adopt an amendment to the Sherman Zoning Regulations on July 2, 1992 and on September 8, 1992. The amendment purported to increase the minimum lot size in "Zone B" from approximately one "builder's" acre of 40,000 square feet to two such acres. The appeals were consolidated by order dated November 6, 1992.
 I
The court will first turn to the jurisdictional issue of aggrievement.
No evidence was presented as to Tessa Pascarella's ownership of property at relevant times or other aggrievement. The appeal of Tessa Pascarella is therefore dismissed for lack of aggrievement. The court finds that Timber Trails Associates is both statutorily and classically aggrieved. It is the owner of property affected by the zone change, and its premises are specially and adversely affected by the action of the Planning and Zoning Commission in limiting the number of lots which can be built upon the premises. See Timber Trails Corporation v. Planning Zoning Commission, 222 Conn. 374, 376 n. 3 (Timber Trails I); Fletcher v. Planning Zoning Commission, 158 Conn. 497,502-03.
Because the court finds that the Commission did not give to Timber Trails Associates a fair opportunity to directly cross-examine a key witness, and prevented inquiry on the subject of subsurface sewage disposal which was central to the decision to be made, the appeal of Timber Trails is sustained.
 II
Some reference to the prior procedural history of this case is in order. On October 2, 1978, the defendant adopted, inter alia, an amendment to section 332 of the Sherman Zoning Regulations which changed the minimum lot size in Zone B from 40,000 square feet to 80,000 square feet and made all property CT Page 4254 located in Zone B subject to the same requirements as property located in Zone A. The amendment provided:
 Effective October 7, 1978, the B Zone will be changed from 40,000 square feet to 80,000 square feet per residential lot according to the recommendation of the Master Plan of Development and all properties in the B Zone shall be required to meet all requirements of the A Zone.
The plaintiff appealed from the defendant's decision to adopt the proposed amendment to section 332 of the Zoning Regulations. Ten years later, on December 28, 1988, after the judge who had first heard the case died, the court, Saden, J., upheld the validity of the amendment and dismissed the plaintiff's appeal. Timber Trails Corporation v. Planning Zoning Commission, Superior Court, Judicial District of Danbury, Docket No. 27 18 13 (December 28, 1988). On appeal to the Supreme Court, the court held that the Commission's failure to comply with the notice requirements of General Statutes, Sec. 8-3(a), fourteen years earlier, rendered the Commission's vote adopting the proposed amendment void. Timber Trails Corporation v. Planning Zoning Commission, supra, 374. The Supreme Court reversed the trial court's judgment of dismissal and remanded the action to the trial court to render judgment sustaining the appeal. Id.
On June 25, 1992, in response to the Supreme Court's decision in Timber Trails I, supra, the Commission held a public hearing to readopt, inter alia, the proposed amendment to the Zoning Regulations changing the minimum lot area from 40,000 square feet to 80,000 square feet which it had first attempted in 1978. The hearing was continued to July 2, 1992. At the July 2, 1992 hearing, the seven person panel voted unanimously to readopt the proposed amendment to section 332 of the Zoning Regulations.
On July 29, 1992, the plaintiff appealed to the Superior Court from the Commission's decision adopting the proposed amendment to section 332 of the Zoning Regulations on the grounds that (1) the Commission failed to comply with the requirements of General Statutes, Sec. 8-3b; (2) the Commission failed to comply with the requirements of General Statutes, Sec. 8-3a; (3) the Commission failed to conduct a study of the issue of increasing the minimum lot sizes in Zone B in accordance with the town's comprehensive plan of development; (4) the plaintiff was denied the right to cross-examine witnesses; (5) the purposes behind the amendment are not countenanced by either statute or public CT Page 4255 policy; (6) the amendment is exclusionary; (7) the amendment creates over one hundred (100) nonconforming lots; (8) the amendment increasing the minimum lot size is not supported by a change in circumstances from the time a minimum lot size of 40,000 square feet was adopted; (9) the Commission prejudged the proposed amendment; and (10) the Commission's actions deprived the plaintiff of property without due process of law. (Plaintiff's Complaint, Docket No. 31 06 83 ("Appeal 1") pp. 11-14.)
Following Appeal 1, the Commission held a second public hearing on September 8, 1992 to reaffirm and readopt the proposed amendment to section 332 of the Zoning Regulations. At the September 8, 1992 hearing, a unanimous seven member vote was taken to reaffirm and readopt the proposed amendment.
The plaintiff again appealed to the Superior Court from the defendant's affirmation and readoption of the proposed amendment on the grounds that (1) the Commission failed to comply with the requirements of General Statutes, Sec 8-3a; (2) the Commission failed to conduct a study of the issue of increasing the minimum lot sizes in Zone B in accordance with the town's comprehensive plan of development; (3) the plaintiff was denied the right to cross-examine witnesses; (4) the purposes behind the amendment are not countenanced by either statute or public policy; (5) the amendment is exclusionary; (6) the amendment creates over one hundred (100) nonconforming lots; (7) the amendment increasing minimum lot size is not supported by a change in circumstances from the time a minimum lot size of 40,000 square feet was adopted; (8) the Commission prejudged the proposed amendment; and, (9) the Commission's actions deprived the plaintiff of property without due process of law. (Plaintiffs' Complaint, Docket No. 31 33 84 (Appeal 2, pp. 11-13.)
On October 7, 1992, the plaintiff filed a motion to consolidate the two appeals. The court, West, J., granted the plaintiff's motion to consolidate on November 6, 1992.
On November 20, 1992, the plaintiff amended Appeal 2 to allege two additional grounds for appeal: (1) the Commission acted improperly by incorporating by reference testimony and evidence from the June 25, 1992 hearing; and (2) the Commission's failure to explicitly exclude Timber Trails Associates' property from the scope of the amendment is in violation of General Statutes, Secs. 8-28a and 8-28b. (Amended Complaint, Appeal 2, CT Page 4256 pp. 14-17.)
The defendant filed an answer to Appeal 1 and on January 14, 1993, the defendant filed and answer and three special defenses to Appeal 2. All special defenses were denied. The first special defense alleges that the additional grounds alleged in the amended appeal were waived. The second special defense provides: "Paragraph 17 asserts a matter for which appeal of a legislative act is not the proper remedy, and as to which judicial review is barred by applicable principles of issue preclusion and/or fact preclusion." (Defendant's Answer, Appeal 2, Second Special Defense.) The third special defense alleges that "[p]aragraphs 14, 15 and 16 attempt to attack a procedural convenience of which the plaintiff took advantage, which they lack standing to appeal and as to which they failed, despite notice to object." (Defendant's Answer, Appeal 2, Third Special Defense, p. 3.)
 III
The court will first take up the plaintiff's claim that it was deprived of a due process right to make effective cross-examination. The plaintiff has the burden of proof to show the board acted improperly. Huck v. Inland Wetlands 
Watercourses Agency, 203 Conn. 525, 536 (1987).
The plaintiff argues that it was denied the right to cross-examine the Commission's expert witness, Dr. Luce, a soil scientist. Dr. Luce did not testify at the September 8, 1992 hearing. However, the plaintiff argues that since it was denied the right to cross-examine Dr. Luce at the June 25, 1992 hearing, and the record of that hearing was incorporated into the September 8, 1992 hearing, the Commission's denial of the plaintiff's right to cross-examine Dr. Luce in the first hearing was also incorporated into the September 8, 1992 hearing.
The court finds that the board's second hearing on September 8, 1992 was technical in nature prompted by a desire to cure an unrelated defect in the first proceeding. There was no desire on the part of the board to rehear the whole case as suggested by its declaration to rely on the transcript of the first proceeding, while nonetheless permitting testimony from those who wished to offer it at the second hearing. It would have been a futile act on the part of the plaintiff to again insist at a second hearing on the right of direct cross-examination of Dr. CT Page 4257 Luce since the board was unequivocal in its prior denial of it. "The law does not require an act which would be a mere futility." Federal Finance Co. v. Forman Properties, Inc., 135 Conn. 153,158. Under these circumstances, the court finds no waiver of that right.
Zoning boards are not courts of law and are not required to meet their same exacting standards in conduct of hearings. However, a public hearing mandated by statute is required by procedural due process of law principles to be conducted according to the principles of natural justice. Lathrop v. Planning Zoning Commission, 164 Conn. 215, 221 (1973); Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247
(1984); Fromer v. Boyer-Napert Partnership, 42 Conn. Sup. 57,72 (1991). Conducting a just public hearing means that the public is given the opportunity to participate "at a meaningful time and in a meaningful manner. . . ." Schwartz v. Town Plan 
Zoning Commission, 168 Conn. 20, 24 (1975). Both proponents and opponents must have the equal opportunity to do so. Schwartz, supra. Zoning hearings permit some exercise of judgment in the manner of conduct of hearings. It must be done fairly, though. Fairness means that the opportunity to participate at a meaningful time and in a meaningful manner must be afforded equally to proponents and opponents of any application. Connecticut Fund for the Environment, Inc. v. Stamford, supra, 247. The case of Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles, 165 Conn. 42, 44, 45, summarizes some of the basic requirements of procedural due process necessary to ensure a fair hearing. "`[I]f . . . [administrative] agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play.' Morgan v. United States, 304 U.S. 1, 22, 58 L.Ed. 773,82 L.Ed. 1129. The right to a hearing means the right to a meaningful hearing with the awareness of what matters must be countered. It embraces the right to a reasonable opportunity to know the claims of the opposing party and to meet them. Morgan v. United States, supra, 18. The concept of due process, when the government seeks to deprive a person of life, liberty or property, is that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and due process requires that the procedure involved must be appropriate to the nature of the case. See Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, CT Page 4258 313, 70 S.Ct. 652, 94 L.Ed. 865; Anderson National Bank v. Luckett, 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692." A local planning and zoning commission acts in a legislative capacity when it amends zoning regulations. Protect Hamden/North Haven From Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 542 (1991). "A municipal planning [and zoning] commission, if functioning as a legislative . . . agency, is required `to observe the safeguards, ordinarily guaranteed to the applicants and the public of a fair opportunity to cross-examine witnesses . . . and to offer evidence in explanation or rebuttal. . . .'" (Citation omitted.) Dram Associates v. Planning Zoning Commission, 21 Conn. App. 538, 543,574 A.2d 1317, cert. denied, 215 Conn. 817, 576 A.2d 544 (1990). At the June 25, 1992 hearing, the plaintiff's attorney requested the opportunity to directly cross-examine Dr. Luce. (ROR, Item 5, pp. 17-18.) The Commission, however, denied his request and stated that any "[q]uestions may be directed to the Commission, which can decide whether or not to pass them along to the witness." (ROR, Item 5, p. 17.) "A requirement of the . . . [commission] that attorneys desiring to cross-examine witnesses should ask questions through it . . . place[s] an unjustifiable restriction upon their rights." Wadell v. Board of Zoning Appeals, 136 Conn. 1,10, 68 A.2d 152 (1949). It was error for the Commission to require the plaintiff's attorney to ask questions through it. Not every such error requires that the appeal to the court be sustained. Wadell, supra. But the denial of an opportunity to cross-examine a witness is not harmless error if the testimony is germane to the commission's decision. Dram Associates v. Planning Zoning Commission, supra, 543, citing Wadell v. Board of Zoning Appeals, supra, 10. The burden is on the party claiming the lack of an opportunity to cross-examine to show that harmful error resulted from the denial of the right to cross-examination. Fromer v. Boyer-Napert Partnership, supra, 72. At least as to two of these questions, the plaintiff has done so.
The plaintiff argues that its attorney asked several questions which the Commission instructed Dr. Luce not to answer. In opposition, the defendant argues that the questions, and the answers thereto, were not relevant and, therefore, any denial of the right to cross-examination was harmless error.
The plaintiff asserts that Dr. Luce was not permitted to answer the following questions: (1) who furnished him with the documents he reviewed in formulating his opinion and when (ROR, Item 5, pp. 18-19); (2) whether he (Dr. Luce) had made any study CT Page 4259 concerning the septic systems of present one-acre lot dwellings in Timber Trails (ROR, Item 5, p. 20); and (3) whether the State Health Code and the Health Code of the Town of Sherman regulate matters such as the installation and the performance of on-site septic systems. (ROR, Item 5, pp. 22-23.)[1] Although the Commission instructed Dr. Luce not to answer the first question, Commissioner Piel did state that "we furnished the documents." (ROR, Item 5, p. 19.) At a point in his own expert testimony, Dr. Luce did indicate that he had received certain documents from the Planning and Zoning Commission, and had them for about a week before the hearing, and had particularly studied the topographical map and that was the basis of his opinion along with a visit that he had paid to various parts of Zone B. The Wadell rule tells us that the plaintiff should have been permitted to pose this question directly, which would have provided an opportunity for follow-up questions raised by the answer, but since the information ultimately was spread upon the record by the witness himself, an argument can be made that the Commission's error was harmless as to that question. However, in the court's opinion, the plaintiff has made a compelling argument about the prejudice to it in the Commission's prohibition against the other two questions. Dr. Luce testified that "the B Zone in Sherman, indeed Sherman in its entirety . . . because of its steep slopes, its percentage of area with shallow depth to bedrock, and its percentage of land that has special quality difficulties . . . all to me justified two-acre zoning from a practical point of view." (ROR, Item 5, p. 14.) Luce then set out his opinions as to the need for two-acre zoning relating it to concerns about the effects of subsurface sewage disposal on ground water and surface water, and difficulties in establishing leaching systems for septic fields. (ROR, Item 5, p. 15.) He issued the following opinion: "As it stands now, I do not think two-acre zoning exclusive of wetlands is excessive. I think that's quite rational, quite justifiable given the Town of Sherman, especially the B Zone in Sherman."
This court is of the opinion that the plaintiff should have been permitted to ask the expert, Dr. Luce, whether he had made any study concerning the septic systems of present one-acre lots already developed in Timber Trails. As the board's expert, he had made a broad brush opinion that two-acre minimum zoning was required especially in the B Zone. One of the issues involved was whether lots of only forty thousand square feet could handle subsurface sewage disposal in the B Zone of which the plaintiff's property was a substantial part.[2] The question of whether CT Page 4260 the expert had made a study of these other smaller lots in Timber Trails was therefore relevant to one of the principal issues before the board, because if existing developed one-acre lots in Timber Trails safely disposed of sewage and other domestic wastes by on site subsurface sewage disposal systems without creating leaking or surface flow, or any menace to public health, it was strong evidence that the remaining land might do so, regardless of the expert's opinion that, generally, there was poor soil quality in the Town of Sherman.[3] A concession by the expert that no inquiry had been made, or more strongly that study had revealed no problem at all, would have been a telling and crucial piece of evidence of which the plaintiff was entitled to make a record.
The court's opinion is that it is relevant information to be able to find out if the expert realized that the State Health Code and the Sherman Health Code must still be complied with, as to any on site septic system, even on a 40,000 square foot lot. If the expert lacked such basic knowledge, it would undermine the very footings and foundations of his opinion that two-acre minimum lot size was required in the zoning regulations to ensure proper disposal of septic waste. Due process of law requirements of both the federal constitution and the state constitution required the defendant to permit the plaintiff to make a record of the lack of true foundation for Dr. Luce's expert opinion through the witness himself. The right to make such a record is valuable and crucial in administrative proceedings where, like the case at bar, on appeal the court is limited to the record in its judicial scope of review.
These are then hardly harmless errors in a dispute of which has gone on since 1978 about whether the plaintiff's land will be developed with a one-acre rather than a two-acre minimum lot size. Furthermore, the Commission placed reliance on Dr. Luce's testimony. It hired Dr. Luce. It called him as a witness. It also is clear that in rendering their decision, the Commission members paraphrased and echoed without attribution comments and opinions given by Dr. Luce at the hearing. (ROR, Item 7.) Commissioner Piel, as did Dr. Luce, expressed generalized concerns about the effectiveness of septic systems in other towns. (ROR, Item 7, p. 8.) The adopting resolution stated as its goal that "all residential lots [should] supply their own water and dispose of their own septic waste. . . ." (ROR, Item 7, p. 1.) Dr. Luce's opinion about two-acre minimum zoning was incorporated into the adopting resolution, when the Commission CT Page 4261 stated "Whereas the Commission has determined that the land slopes, soil types and depths to bedrock prevailing throughout virtually all the B Zone require minimum lot sizes of 80,000 square feet or more, exclusive of wetlands, to meet the goals of permanent on-site septic disposal and of development without material effect on the surrounding region."
Finally, there were but two property owners represented by one lawyer opposing the proposal, who, after being refused the right of direct cross-examination, then proposed to ask but a total of ten questions through the chair. In terms of the need to exercise reasonable control over a hearing, there was no reason to stifle the ability of the plaintiff to ask these questions and to ask them directly to the expert.[4]
The defendant urges that because the plaintiff had the right to offer evidence of its own about conditions on the existing one-acre lots and the applicability of state health regulations, that denial of cross-examination was not prejudicial. That argument misses the point. Calling another expert to contradict is a poor substitute for obtaining a witness's concession of a relevant point in cross-examination. The plaintiff's due process right consisted of the right to cross-examine the defendant's soil scientist directly and to attack and rebut the witness's opinions through the witness himself. Dram Associates v. Planning Zoning Commission, supra; Pizzola v. Planning Zoning Commission 167 Conn. 202; Waddell v. Board of Zoning Appeals, supra. An aggrieved party cannot be foreclosed from directly challenging pontification of an expert where testimony central to the issue is given. Otherwise, the right of direct cross-examination would be a hollow one.
There was a right of direct cross-examination. There was error in the Commission's limitation of it. The error was not harmless.
Because the court's findings are dispositive of this appeal, the remaining issues raised are not addressed.
For all these reasons, the appeal of the plaintiff, Timber Trails Associates, is sustained.
Flynn, J.