E & E HAULING, INC., *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees.

Second District   No. 79-13

Opinion filed November 5, 1979.—Rehearing denied December 12, 1979.

Russell J. Hoover and Thomas W. McNamara, both of Jenner and Block, of Chicago, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and John A. Davidovich, Assistant State's Attorneys, of counsel), and Gerald J. Brooks, of Fawell, James & Brooks, of Naperville, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs appeal from the judgment of the Circuit Court of Du Page County upholding the validity of an amendment to the county's zoning ordinance. Two interlocutory orders of the court below are also subject matters of this appeal: the dismissal as a party-plaintiff of E & E Hauling, Inc., and the partial voiding of the *lis pendens* referring to this case.

Plaintiff, E & E Hauling, Inc. (E & E), operates a sanitary landfill in the Millard Lake Forest Preserve in Du Page County. Plaintiff, LaSalle National Bank, is trustee under a land trust of a 63-acre tract across the road from the landfill; plaintiff, Heil, is the beneficiary of this land trust. Edward Heil is also president of E & E. Defendant, American Heritage Service Corporation (American), is owner of a 254-acre tract adjacent to the Heil property.

Prior to the complained of zoning change, a zoning district property line crossed both the American and Heil properties dividing each property in half. The northern half of each parcel was zoned R-2 (single-family residence) and the southern halves were zoned M-1 (manufacturing).

On March 11, 1977, American filed petitions seeking to rezone the southern half of its property from M-1 to R-2 and to have a special use floodplain on the property. American also requested approval of a plat plan calling for subdivision of its tract into 193 single-family residence lots. On March 17, 1977, notice of a public hearing to be held on March 31 was published. On March 21, the zoning board of appeals (zoning board) mailed additional notices to the owners of neighboring parcels.

The hearing began as scheduled before three of seven members of the Board. At the outset of the hearing the Heil attorney, Mr. McNamara, objected to an alleged absence of a quorum. This objection was overruled on the basis of the chairman's belief that even a single zoning board member could conduct a hearing. The chairman then stated that since attorney McNamara had made a statement he should be sworn. The attorney refused to be sworn on the basis that he did not intend to testify. An engineer was called by the petitioners and gave testimony as to present and proposed use of the property. The Heil attorney then asked to cross-examine this witness. This request was denied; however, the chairman said he would accept relevant questions. American's president also testified in favor of the petitions. Again a cross-examination requested by the Heil attorney was denied.

After the close of petitioners' presentation, attorney McNamara

stated an intention to question witnesses who were appearing for the objector. The chairman again requested that McNamara be sworn and this request was again refused. The chairman then ordered that any statements by McNamara be stricken from the record.

On April 7, 1977, the zoning board held its monthly review meeting. After making findings of fact, the zoning board, by a 6-1 vote, approved the petition subject to the condition that the tract be developed in accordance with the proposed plat. On April 14, the Heil interests—alleging they were in excess of 20% of the frontage immediately adjoining the proposed rezoning—filed a formal protest to the amendment. By a 3-2 vote the planning, building, and zoning committee of the Du Page County Board voted to concur with the zoning board's recommendation; by a 15-9 vote the full Du Page County Board enacted the proposed ordinance.

As a result of the rezoning along its eastern boundary, the building setback requirements of the Heil property were increased from 40′ to 200′. Two buildings owned by Heil were rendered nonconforming structures which could not be altered without a zoning variance. Noise, enclosure, and loading restrictions were also imposed on the Heil property.

E & E and the owners of the Heil property brought suit against the county seeking to invalidate the rezoning and the plat plan. The county moved to dismiss E & E as a plaintiff, claiming that E & E had no ownership interest in the neighboring property and had failed to allege special damages. This motion was subsequently granted, as was a motion by the remaining plaintiffs to add American as an additional party-defendant.

In connection with the case, plaintiffs filed a *lis pendens* against the American property. Prior to trial, American moved for authorization to make deeds and other conveyances on the north half of its property free from the *lis pendens*. After a hearing, the trial court voided the *lis pendens* as to the northern lots on the basis that it was effectively an injunction against sale of these lots which had not been rezoned.

After a hearing, the trial court found that although some of the conduct at the public hearing was "inappropriate and uninformed," the rezoning was proper. Plaintiffs appeal.

On appeal, plaintiffs raise the following contentions: that the refusal of the zoning board to allow cross-examination of witnesses invalidated the hearing, that the zoning board exceeded its authority when it required plaintiff's attorney to be sworn as a witness, that the failure to give the required notice of the public hearing invalidated the subsequently adopted amendment, that the hearing was invalid because it was conducted by less than a quorum of the zoning board, that the protest of

the rezoning filed by plaintiffs necessitated a three-fourths vote of the county board for adoption of the zoning amendment, that the trial court erred in dismissing E & E as a party-plaintiff, and that the trial court erred when it voided the *lis pendens* as to the northern half of American's tract.

The general rule is well established that a " 'public hearing' before any tribunal or body" means "the right to appear and give evidence and also the right to hear and examine the witnesses whose testimony is presented by opposing parties." (*Braden v. Much* (1949), 403 Ill. 507, 513, 87 N.E.2d 620, 623; *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662.) It is also well settled that in the absence of a proper hearing an amendment to zoning is void. *North State, Astor, Lake Shore Drive Association v. City of Chicago* (1970), 131 Ill. App. 2d 251, 266 N.E.2d 742.

In response to these general rules, defendants make two arguments. First they point out that the zoning board had an informal procedure for cross-examination (*i.e.*, the submitting of questions to the chair). They argue that in view of the informal, legislative nature of zoning board meetings (*Northwestern University v. City of Evanston* (1977), 55 Ill. App. 3d 609, 370 N.E.2d 1073, *rev'd on other grounds* (1978), 74 Ill. 2d 80) this informal procedure was adequate. Secondly defendants maintain that it was plaintiffs' attorney's refusal to be sworn that caused any limitation on this informal right of cross-examination.

We agree with defendants to the limited extent that we find the issues of cross-examination and requiring plaintiffs' attorney to be sworn are interrelated. We disagree, however, with the proposition that the procedures followed at the zoning board hearing adequately protected plaintiffs' interest as adjoining property owners.

■■ Both State statute (Ill. Rev. Stat. 1977, ch. 34, par. 3158) and the county zoning ordinance (Du Page County Zoning Ordinance of 1935, as amended, §VIII) provide that no amendment to the county zoning ordinance may be made without a prior hearing before the zoning board. Inasmuch as no particular method of procedure for the conduct of the hearings is provided by either the statute or ordinance, the hearing must be governed by established rules of procedure applicable generally to administrative tribunals. (*Flick v. Gately* (1946), 328 Ill. App. 81, 85-86, 65 N.E.2d 137, 139.) As noted above, the term "hearing" means the right to appear and give evidence and the right to hear and examine witnesses. Thus, in *Huddleston* the court found a "hearing" which consisted solely of the county board's attorney reading a list of charges did not fulfill a statutorily imposed hearing requirement. Similarly, in *Board of Education v. County Board of School Trustees* (1957), 13 Ill. App. 2d 561, 142 N.E.2d 742, the court was faced with a proceeding at which witnesses were not sworn and the board refused the right of cross-examination with

a single exception. The court held that the term "hearing" meant orderly proceeding, that the term "evidence" must refer to commonly accepted definitions, and that the procedure there was not in keeping with either.

While the courts of an increasing number of jurisdictions have now resolved the question of the right to cross-examination of witnesses at zoning board hearings (see Annot., 27 A.L.R.3d 1304 (1969)), there are apparently no Illinois cases that have decided this issue. After a review of the decisions from other jurisdictions, we find the following language from *Wadell v. Board of Zoning Appeals* (1949), 136 Conn. 1, 8-9, 68 A.2d 152, 155-56, to be most persuasive:

> "* * * [a zoning board] often deals with important property interests; and a denial of a right to cross-examine may easily lead to the acceptance of testimony at its face value when its lack of credibility or the necessity for accepting it only with qualifications can be shown by cross-examination. We quote from *Interstate Commerce Commission v. Louisville & Nashville R. Co.*, 227 U.S. 88, 93, 33 S. Ct. 185, 187, 57 L. Ed. 431: 'The Commission is an administrative body and, even where it acts in a quasi judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. [Citation.] But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. * * *' "

■■ ■ Given this reasoning from *Wadell* and in light of the general rule governing all hearings as stated in *Braden*, we find that the procedures at zoning board hearings must include the right to relevant cross-examination. (See 2 Am. Jur. 2d *Administrative Law* §424 (1962).) We further agree with the *Wadell* court that "a requirement of the board that attorneys desiring to cross-examine witnesses should ask questions through it would place an unjustified restriction on their rights." 136 Conn. 1, 10, 68 A.2d 152, 156.

■■ With respect to requiring plaintiffs' attorney to be sworn, the written policies of the zoning board provide that "all witnesses giving testimony relative to facts in the case being heard shall be sworn." We find that this policy is meritorious, especially in light of *Board of Education v. County Board of School Trustees*, discussed above. (See also 2 Am. Jur. 2d *Administrative Law* §423 (1962).) We realize that attorneys often appear

before zoning boards to give testimony. However in this case attorney McNamara was merely addressing the board as to procedural matters and seeking the opportunity to examine witnesses. Thus he clearly was *not* a witness giving testimony relative to facts. We hold that in a case such as this, where an attorney is not offering testimony, it is improper to require him to be sworn as a witness.

In sum, we find that the hearing held by the zoning board was rendered improper by the board's failure to allow cross-examination of witnesses and by its requiring plaintiffs' attorney to be sworn. Because an improper hearing voids a zoning amendment (*North State, Astor, Lake Shore Drive Association*), we reverse the judgment of the court below.

Having determined that this matter must be reversed, we find it unnecessary to consider the issues of the necessity for a three-fourths vote of the county board, the propriety of the notice of the hearing, and the dismissal of E & E as a party-plaintiff.

■■ Plaintiffs also appeal from the trial court's order partially voiding the *lis pendens* filed against defendant's property. *Lis pendens* means a pending suit. One purpose of the doctrine is the avoidance of endless litigation of property rights precipitated by transfers of interest. This end is achieved by conclusively binding one who obtains an interest in the property during the pendency of a suit affecting it to the result of that litigation as if he had been a party from the outset. (*Taylor v. Lanahan* (1979), 73 Ill. App. 3d 829, 831, 392 N.E.2d 425, 427.) In this respect, the filing of a *lis pendens* is designed to protect a plaintiff from third persons who might acquire, during the pendency of litigation, interest in the subject matter of the litigation such as would preclude the court from granting the plaintiff the requested relief. 51 Am. Jur. 2d *Lis Pendens* §1 (1970).

■■ Another, less widely recognized, purpose of the doctrine is to protect purchasers by giving them notice that the land which they are buying might be affected by a judgment, later entered in a pending action, by which they would be bound. (*Braunston v. Anchorage Woods, Inc.* (1961), 10 N.Y. 2d 302, 222 N.Y.S. 2d 316, 178 N.E.2d 717 (dissenting opinion).) The *Braunston* case illustrates the two-pronged function of *lis pendens* and some of the possible tensions between the above-described purposes of the doctrine. The plaintiffs in that case brought an action for an injunction to compel elimination of conduits through which it was alleged surface water was dumped on plaintiff's land from defendant's land. A notice of pendency of this suit was filed by plaintiffs against the tract of land owned and being developed by defendants. A majority of the New York Court of Appeals held that the *lis pendens* was improperly filed where the party who had filed it claimed no right, title or interest in or to the property against which it was filed and where the suit simply

concerned some encroachment or wrong perpetrated by defendants on plaintiffs' land. The three dissenting justices, however, focused on the second purpose of *lis pendens*—the protection of purchasers. The dissenters were concerned that without the *lis pendens* the developer who created the nuisance damaging adjoining property would be able to sell houses to unsuspecting purchasers who would then have the responsibility of correcting the nuisance.

Given the view expressed by the *Braunston* majority that the party filing a *lis pendens* must have a claim of right, title, or interest in the affected property (see also *Village of Mendota Heights v. Village of Lilydale* (1972), 294 Minn. 193, 197, 199 N.W.2d 803, 805), there is a real question as to whether or not the doctrine may ever be employed in zoning cases where right, title and interest are not generally at issue. Thus, in *Realsco, Inc. v. Green Acres Civic Association* (La. App. 1964), 169 So. 2d 570, where a civic association challenging a zoning classification filed a *lis pendens* against the affected property, the court affirmed a voiding of the *lis pendens*. The court reasoned that the underlying suit was concerned only with zoning and any alienation of the property in question legally could not prejudice that suit in any way. (169 So. 2d 570, 572.) However, in *Penataquit Association v. Furman* (Sup. Ct. Suffolk County 1953), 204 Misc. 960, 128 N.Y.S. 2d 419, *aff'd* (1954), 283 App. Div. 894, 130 N.Y.S. 2d 53, the filing of a *lis pendens* was found to be proper where an underlying suit challenged a zoning change. The court found that the judgment in the zoning matter might affect the use or enjoyment of the property against which the *lis pendens* was filed and thus the filing was proper under the New York statute.

The doctrine of *lis pendens* originated at common law, but is now controlled in many States—including Illinois—by statute. The contradictory holding in the *Realsco* and *Penataquit* cases is partly explained by the differing language of the *lis pendens* statutes of Louisiana and New York. The controlling statute in *Realsco* was limited to actions " 'affecting the title to, or asserting a mortgage or privilege on, immovable property * * *.' " (169 So. 2d 570, 572.) The statute in *Penataquit* was considerably broader providing that a *lis pendens* may be filed in an action brought to recover a judgment affecting the title to, or the possession, *use or enjoyment* of real property. (128 N.Y.S. 2d 419, 421.) The Illinois *lis pendens* statute which controls the instant case (Ill. Rev. Stat. 1977, ch. 110, par. 405; formerly Ill. Rev. Stat. 1975, ch. 22, par. 53) is broader than that in *Realsco*, but not as broad as that in *Penataquit*. The Illinois statute provides in pertinent part as follows:

> "Every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other suit seeking equitable relief, affecting or involving real property shall, from the time of the filing

in the office of the recorder of deeds in the county where the real estate is located of a notice signed by any party to the suit or his attorney of record or attorney in fact on his behalf, setting forth the title of the cause, the parties to it, the court where it was brought and a description of the real estate, be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as aforesaid, not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Act, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto.

❂ ❂ ❂

At any time during the pendency of a suit or proceeding initiated after July 1, 1959 which shall be constructive notice, the court, upon motion, may for good cause shown, provided a finding of specific performance is not necessary for final judgment in the suit or proceeding, and upon such terms and conditions, including the posting of suitable bond, if any, as it may deem equitable, authorize the making of a deed, mortgage, lease or other conveyance of any or all of the real estate affected or involved, in which event the party to whom the deed, mortgage, lease or other conveyance of the real estate is made and those claiming under him shall not be bound by such suit or proceeding. ❂ ❂ ❂"

While the above statute refers to proceedings "affecting or involving real property" as opposed to merely proceedings affecting title, it seems clear that the statute is addressed solely to the binding of subsequent purchasers to proceedings. Specifically the paragraph which gives courts the power to order deeds and conveyances free of the *lis pendens* provides that the purchaser shall not be bound by the result of the suit or proceeding. Nowhere does the statute refer to the alternative purpose of *lis pendens, i.e.,* giving notice to purchasers.

■■ The filing of a *lis pendens* often carries a harsh result. Thus the doctrine is subject to strict construction. (51 Am. Jur. 2d *Lis Pendens* §4 (1970).) In the present case, the filing of the *lis pendens* has made it virtually impossible for American to sell lots even in that portion of its property not directly the subject matter of the zoning change. A *lis pendens* is not an injunction as it does not formally restrain sale, conveyance, or purchase. (*Suess v. Stapp* (7th Cir. 1969), 407 F.2d 662, 664.) However, the filing of a notice of a pending suit often has the same practical effect as an injunction without providing a defendant with the protections built into injunction statutes. We agree with the conclusion of

the court in *Mageloff v. Sarkin* (Sup. Ct. Onondaga County 1966), 52 Misc. 2d 737, 276 N.Y.S. 2d 708, 711, that a *lis pendens* is not suitable as a method for obtaining an indirect injunction. "The provisional remedy of a notice of pendency may be used as a shield only and not as a sword." Accordingly we affirm the ruling of the trial court voiding the *lis pendens* as to the lots wholly north of the zoning line.

■■ Finally there is the issue of the alleged absence of a quorum. We find no merit in the plaintiffs' contention that a quorum of the zoning board must be present at public hearings. While it is true only three of the seven zoning board members were present for the hearing, a quorum of the zoning board later took formal action on the matter. The policies of the zoning board provide that "hearings are fact finding in nature and testimony is recorded by a court reporter who supplies the Zoning Board of Appeals with a transcript of the proceeding of the hearing and therefore does not require a quorum to function." Our supreme court in *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785, explicitly approved fact-finding by less than a quorum. The court held that all members of an administrative board need not personally attend a public hearing as long as they consider the evidence presented. Thus we find nothing improper with the zoning board quorum policy.

Affirmed in part, reversed in part.

NASH and SEIDENFELD, JJ., concur.