USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1786 TPM HOLDINGS, INC., Plaintiff, Appellee, v. INTRA-GOLD INDUSTRIES, INC. and JASPER C. ROWE, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Jasper C. Rowe with whom Law Offices of Jasper C. Rowe was on _______________ _______________________________ briefs for appellants. Daniel P. Schwarz with whom Christopher Cole and Sheehan, ___________________ _________________ ________ Phinney, Bass & Green, P.C. were on briefs for appellee. _______ __________________ ____________________ July 30, 1996 ____________________ Per Curiam. Intra-Gold Industries, Inc. ("Intra-Gold"), __________ a Texas corporation, appeals from the New Hampshire district court's grant of summary judgment in favor of TPM Holdings, Inc. ("TPM"), in TPM's action to remove a notice of lis ___ pendens from the title of property it owns in New Hampshire. _______ The lis pendens relates to a Texas federal-court action ____________ brought by Intra-Gold against TPM and another party, New England Aggregate Trust, Inc. ("Aggregate Trust"), in which Intra-Gold sought enforcement of an alleged agreement with Aggregate Trust to transfer to Intra-Gold certain mineral rights in the New Hampshire property. The background facts are complex but largely undisputed, and we limit our description to the transactions directly pertinent to this appeal. In June 1992, TPM bought a promissory note and mortgage interest in 3,500 acres of property located in both Freedom and Madison, New Hampshire. One of the mortgagors was Freedom Properties Realty Trust ("Freedom Properties"), a New Hampshire general partnership with Aggregate Trust as its general partner. By late 1992, the mortgagors were in default, and TPM had initiated foreclosure proceedings. Intra-Gold claims that in January 1993, Aggregate Trust agreed on behalf of Freedom Properties to assign the latter's mineral rights in the New Hampshire property to Intra-Gold. According to Intra-Gold this was part of a plan to avoid the -2- -2- foreclosure; in return for the mineral rights, Intra-Gold would try to arrange financing that would permit Aggregate Trust to retire its debt to TPM and would pay royalties to Aggregate Trust for the minerals removed.  But in February 1993, the mortgagors of the New Hampshire property--including Freedom Properties--agreed to deed the property to TPM in lieu of foreclosure proceedings. The agreement reserved in the mortgagors the right to exploit the minerals for one year and gave them an option to purchase the property within one year for approximately $4 million. Intra-Gold took the position that by entering into this settlement, Aggregate Trust had breached its January 1993 agreement with Intra-Gold. In July 1994, Intra-Gold filed suit in Texas state court against Aggregate Trust and TPM, seeking damages and rescission of the deed transferring the property to TPM.  The defendants removed the case to the federal district court for the Eastern District of Texas. The day after bringing the suit, Intra-Gold placed--without notice to TPM or application to any court--a notice of lis pendens on the deed ___________ for the New Hampshire property. It was the filing of this lis pendens in the Registry of Deeds in Carroll County, New ___________ Hampshire that prompted the litigation at issue here.  On November 1, 1994, TPM filed a complaint in the federal district court in New Hampshire, based on diversity -3- -3- jurisdiction, seeking a declaration that the notice of lis ___ pendens was not valid under the New Hampshire statute. N.H. _______ Rev. Stat. Ann. 511-A:8 permits filing a lis pendens ____________ without prior application to the court or notice to the adverse party, in "equity cases for specific performance of an agreement to transfer land or a unique chattel." TPM pointed out that Intra-Gold's Texas complaint sought only money damages and rescission of the deed from Aggregate Trust (and the other mortgagors) granting the New Hampshire property to TPM.  While pre-trial motions were pending in the New Hampshire action, the Texas district court on April 7, 1995, dismissed with prejudice all of Intra-Gold's claims against TPM for failure to state a claim. Fed. R. Civ. P. 12(b)(6). On motion by TPM, the court followed with an order on May 17, 1995, cancelling the notice of lis pendens filed in the New ___________ Hampshire Registry of Deeds. Intra-Gold proceeded with its claims against Aggregate Trust, but after a bench trial in the summer of 1995, the court found in Aggregate Trust's favor on all claims. One might think that resolution of the underlying claims against TPM in Texas would moot the New Hampshire action by removing the basis for the lis pendens, but Intra-Gold ____________ appealed the Texas decision to the Fifth Circuit, and some cases suggest that a lis pendens remains in effect pending ___________ -4- -4- appeal. See 54 C.J.S. Lis Pendens 26 (1987). In all ___ ____________ events, neither party asserts mootness, and there are obvious practical reasons why--with the Fifth Circuit appeal pending- -it is important for TPM to maintain in force the district court's declaration that the lis pendens is invalid. We thus ___________ resume the chronology. In the New Hampshire district court, Intra-Gold argued by motion that the court should refuse to entertain TPM's claim because similar issues were then before the Texas district court. Intra-Gold contended this result was required both by 28 U.S.C. 1450--a claim now abandoned--and for reasons of "fairness and judicial economy." In the alternative, Intra-Gold argued that Texas law should govern the validity of the lis pendens. The district court denied ___________ this motion in June 1995. During the June 1995 hearing, the New Hampshire district court also proposed sua sponte to grant summary judgment on ___ ______ the merits in favor of TPM, because the lis pendens was not ___________ authorized by the New Hampshire statute because the underlying Texas action was not an equity case for specific performance of an agreement to transfer land or a unique chattel. In opposition, Intra-Gold conceded this defect, but argued that it had filed an amended complaint in the Texas suit on December 7, 1994--over a month after TPM had initiated the New Hampshire declaratory action--which asked -5- -5- for "an injunction preventing transfer of the property to TPM or any third party and granting title to the property to [Intra-Gold]."  Unpersuaded, the district court granted summary judgment in TPM's favor, explaining simply that the lis pendens "was ___________ not filed in compliance with N.H. Rev. Stat. Ann. 511-A." Intra-Gold now appeals, renewing its earlier claim that, for prudential reasons of fairness and economy, the New Hampshire district court should have declined to hear TPM's action to remove the lis pendens. Alternatively, Intra-Gold contends ___________ that the amended complaint in the Texas suit falls within the "specific performance" exception of the New Hampshire lis ___ pendens statute. We discuss the claims in order.  _______ Obvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs. To resolve such tensions, courts rely primarily on common sense and historical practice. See, e.g., Colorado River Water ___ ____ ______________________ Conservation Dist. v. United States, 424 U.S. 800, 817 ___________________ ______________ (1976); 28 U.S.C. 1404. Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had -6- -6- jurisdiction to resolve the issues and the other court to defer. West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, _________________________ _______________________ 751 F.2d 721, 729 (5th Cir. 1985). But where the overlap between two suits is less than complete, the judgment is made case by case, see Colorado River Water Conservation Dist., ___ ________________________________________ 424 U.S. at 817, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute. Here, the heart of the Texas action was Intra-Gold's breach of contract claim against Aggregate Trust. If determining the validity of the lis pendens required the New ___________ Hampshire district court to assess the merits of this claim, there might be a good case for deferring to the Texas suit. But the New Hampshire court was asked only to decide whether Intra-Gold's Texas suit constituted an "equity case for specific performance of an agreement to transfer land or a unique chattel" under N.H. Rev. Stat. Ann. 511-A:8. This required an assessment of the nature of the claims being ______ made, not their merit, and could not realistically be said to interfere with the Texas court's authority or conduct of its case. Only slightly more troublesome is the argument that the validity of the lis pendens was being litigated in the Texas ___________ suit. Formally this was true, since a few days after filing -7- -7- the New Hampshire suit, TPM also brought a motion in the Texas district court seeking cancellation of the lis pendens. ___________ And indeed, after the Texas court dismissed Intra-Gold's claims against TPM, that court did issue an order to cancel the lis pendens. But beneath this surface resemblance the ____________ two courts were addressing very different issues. Neither party has shown that the Texas district court ever had before it a claim that the lis pendens did not ____________ comply with the New Hampshire statute. Instead it appears that TPM simply requested that, if the Texas court dismissed Intra-Gold's claims, it also cancel the lis pendens since ___________ there would no longer be any litigation pending. If so, there was little risk of conflict posed by the New Hampshire court's resolution of the independent issue of whether the lis pendens complied with New Hampshire state law. ___________ We turn now to the merits of the New Hampshire district court's decision on summary judgment that the lis pendens was ___________ invalid. The district court said that the notice of lis ___ pendens was not filed in compliance with the New Hampshire _______ statute, a point that Intra-Gold has effectively conceded. But, as already noted, Intra-Gold argues that its amended complaint did seek such specific performance. While this is itself an issue open to dispute, for us the anterior question is whether an amended complaint--even within N.H. Rev. Stat. -8- -8- 511-A--can revive and salvage an earlier, invalid lis ___ pendens. _______ It does not appear the New Hampshire state courts have ever decided this issue, but cases from elsewhere suggest that the answer is no. E.g., 5303 Realty Corp. v. O & Y ____ __________________ _____ Equity Corp., 476 N.E.2d 276 (N.Y. 1984). This result may ____________ appear severe or formalistic. But it may also be viewed as a counterweight to the obvious dangers inherent in a lis ___ pendens scheme that allows a party to wield this considerable _______ power without prior application to any court, and with no judicial assessment of the merits of the underlying suit. The purpose of a lis pendens is to notify potential ____________ purchasers that there is pending litigation that may affect title to real property and that the purchaser will take subject to the judgment. This cloud on title can impair the marketability of the property. Under the New Hampshire statute, as in many states, this can be done without resort to a court, under specified circumstances. The resulting danger of abuse has led courts to require strict compliance with lis pendens statutes. E.g., S. Utsunomiya Enters., Inc. ___________ ____ ___________________________ v. Moomuku Country Club, 866 P.2d 951, 963 (Haw. 1994); E & E ____________________ _____ Hauling, Inc. v. County of DuPage, 396 N.E.2d 1260, 1266 ______________ _________________ (Ill. App. Ct. 1979). Consistent with this strict-compliance approach, we see no reason why an invalid lis pendens should be made valid by ___________ -9- -9- a later amendment to a complaint. Where the original _____ complaint does not support the lis pendens, it is easy enough ___________ for the plaintiff who files an amended complaint to file a new lis pendens based upon that new complaint. Allowing an ___________ amended complaint alone to breathe life into an earlier, previously invalid lis pendens could easily cause confusion ___________ and unfair prejudice. Since the plaintiff is responsible for the original error and is free to file a new lis pendens ___________ along with the amended complaint, this outcome appears well warranted. Of course, lacking precedent from a New Hampshire court, we can only make our best assessment as to how the state court would resolve the issue. And there are other contexts in which a later act can revive an earlier, otherwise defunct claim. See, e.g., Fed. R. Civ. P. 15(c). But in the present ___ ____ context, we think that the practical considerations already mentioned, and the general instance that a lis pendens ____________ applicant turn square corners, carries the day for TPM.  Affirmed. _________ -10- -10-