**AGUAKEM CARIBE, INC., Plaintiff,**

v.

**KEMIRON ATLANTIC, INC., Defendant.**

**CIVIL NO. 01–1913 (JAG).**

United States District Court, D. Puerto Rico.

Aug. 12, 2002.

Manuel Fernandez–Bared, Toro, Colon, Mullet, Rivera & Sifre, PSC, San Juan, PR, J. Frazier Carraway, Salem Saxon, P.A., Tampa, FL, for Plaintiff.

Alfredo F. Ramirez–MacDonald, O'Neill & Borges, San Juan, PR, J. Frazier Carraway, Evin L. Netzer, Salem Saxon, P.A., Tampa, FL, for Defendant.

**OPINION AND ORDER[1]**

GARCIA–GREGORY, District Judge.

On July 9, 2001, Plaintiff Aguakem Caribe, Inc. ("Caribe") filed suit against Defendant Kemiron Atlantic, Inc. ("Kemiron") seeking injunctive and monetary relief for breach of a distribution contract. Pending before the Court is Kemiron's motion to dismiss, to transfer under 28

---

1. Laura M. Crumley, a third year student at the University of Illinois College of Law, assisted in the research and preparation of this opinion.

U.S.C. § 1404(a), or to stay proceedings pending resolution of two other cases. The first case, filed in federal court in Florida on May 14, 2001, is against Aguakem International, Inc., for breach of contract. In that case, Kemiron seeks declaratory judgment. Kemiron filed a similar suit against Caribe in federal court in Georgia on July 3, 2001 (the "Georgia litigation"). Kemiron argues that the Court should dismiss this case pursuant to the first-to-file rule, transfer it on convenience grounds, or stay it pending resolution of the previously filed suits in Florida and Georgia. Caribe contends that venue is proper in this Court, to which the parties had the most substantial contacts pursuant to the distribution contract in question. For the foregoing reasons, the Court GRANTS Kemiron's motion to transfer to the Southern District of Georgia.

## FACTUAL BACKGROUND

On July 9, 2001, Caribe, a corporation organized under the laws of Puerto Rico, with its principal place of business in Puerto Rico, filed suit against Kemiron, a corporation organized under the laws of Delaware, with its principal place of business in Georgia. (Docket No. 1.) Caribe avers that Kemiron breached its distribution contract and seeks to collect monies stemming from the breach. (*Id.*)

In 1996, Kemiron entered into a contract with Caribe, making it Kemiron's exclusive distributor for Puerto Rico. (*Id.* at 3.) Caribe claims it properly carried out all its duties under the distribution contract. (*Id.*) On December 31, 1998, Checkpoint Systems of Puerto Rico ("Checkpoint"), Kemiron and Caribe entered into a Product Supply Agreement ("PSA"). (*Id.* at 4.) The PSA is governed by Puerto Rico law.

(Docket No. 8, Exhibit 2, PSA at 6.) It states that Checkpoint will sell chemicals to Caribe, and that Caribe would then sell and deliver them to Kemiron in Georgia, thereby substantially lowering Kemiron's transportation costs. (Docket No. 1 at 4.) Also pursuant to the PSA, Kemiron would sell chemicals to Checkpoint. (Docket No. 8, Exhibit 2, PSA at 6.) Under the PSA, Caribe acted as the "middleman" between Checkpoint and Kemiron. (Docket No. 8, Exhibit 2, Complaint at 2.) Caribe and Kemiron subsequently entered into a series of agreements pursuant to the PSA (collectively, "amendments") which specified the amounts of chemicals that Caribe and Kemiron were to exchange, and the costs incurred by the transactions. (*Id* at 3.) The PSA and the subsequent amendments are the basis underlying the Georgia litigation.

In the Georgia litigation, Kemiron sued Caribe for breach of the PSA. (*Id.* at 1.) Kemiron avers that Caribe wrongfully invoiced it for amounts of chemicals, storage and transportation, which neither the PSA nor the subsequent amendments contemplated. (*Id.* at 7.) Furthermore, Kemiron maintains that it agreed with Aguakem "that Aguakem and KWT[2] would split equally any difference between the amount paid by Checkpoint under the [PSA] for transportation of the [chemicals to Kemiron] (net 90 cents per gallon) and the transportation expense actually incurred by Aguakem." (*Id.* at 8.) Kemiron alleges that Aguakem's transportation expenses are 40 cents per gallon. (*Id.*) Kemiron maintains that Caribe unjustly enriched itself by failing to pay Kemiron its share. (*Id.* at 11.) In the Georgia litigation, Kemiron seeks 50% of the profit Caribe made as a result of its transportation of chemi-

---

**2.** KWT is Kemiron's predecessor in interest. Kemiron inherited all of KWT's obligations and responsibilities under its contracts.

cals from Checkpoint to Kemiron. (*Id.* at 12.)

During the Fall of 2000, Kemiron allegedly materially impaired the distribution rights it had granted to Caribe under the distribution contract. (Docket No. 1 at 4.) Kemiron allegedly raised the price of one of its products to Caribe but sold the same product to another distributor for half as much. (*Id.*) It also withdrew the credit it had previously granted to Caribe. (*Id.* at 5.) On April 11, 2001, Kemiron formally cancelled the PSA. (*Id.*) Kemiron alleges that it did so after Caribe wrongfully invoiced it. (Docket No. 8, Exhibit 2, Complaint at 7.) On May 3, 2001, Caribe warned Kemiron that if Kemiron did not reconsider its course of conduct, Caribe would seek a legal remedy. (*Id.* at 6.) On July 9, 2001, this suit followed. Caribe is asking the Court for relief pursuant to the Puerto Rico Distribution Law, 10 L.P.R.A. § 278, *et seq.*, commonly known as Law 75.

## PROCEDURAL BACKGROUND

Prior to the filing of this case, Kemiron had filed two lawsuits. It filed the first one in Florida on May 14, 2001, against Aguakem International, Inc., for breach of contract, seeking declaratory judgment. The second case is the Georgia litigation. Although Aguakem International, Inc. was a party to this suit at the time the Complaint was filed, it filed a Motion for Voluntary Dismissal without prejudice, which the Court granted. (Docket No. 19.) Hence, all of Aguakem International's claims against Kemiron have been dismissed.

## DISCUSSION

### I.   *Standard of Review*

Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir.2000). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (*quoting Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the district court. *See Cianbro Corp. v. Curran–Lavoie,* 814 F.2d 7, 11 (1st Cir.1987).

The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum. *See Coady,* 223 F.3d at 11 (*citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The factors to be considered by the Court when considering a motion to transfer include the convenience of the parties and witnesses, and the availability of documents. *See Cianbro,* 814 F.2d at 11. The moving party must establish that the factors supporting transfer predominate. *Id.*

### II.   *Kemiron's Motion to Transfer*

[1, 2] Kemiron avers that this case should be transferred on *forum non conveniens* grounds pursuant to 28 U.S.C. § 1404(a).[3] (Docket No. 8.) *Forum non conveniens* determinations should be left to the "district court's sound discretion." *Mercier v. Sheraton Int'l., Inc.,* 935 F.2d 419, 423 (1st Cir.1991) (*citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The

---

**3.** 28 U.S.C. § 1404(a) codified the doctrine of *forum non conveniens.   See Albion v. YMCA*

*Camp Letts,* 171 F.3d 1, 2 (1st Cir.1999).

party moving for dismissal has the burden of establishing that (1) venue is adequate in the other court, and (2) "that considerations of *convenience* and *judicial efficiency* strongly favor litigating the claim in the second forum." *Mercier,* 935 F.2d at 423–24; *Tramp Oil and Marine, Ltd. v. M/V Mermaid I,* 743 F.2d 48, 50 (1st Cir.1984) (emphasis added). There is, however, a strong presumption in favor of the plaintiff's choice of forum. *See Coady,* 223 F.3d at 11 (*citing Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839). Hence, "[t]he moving party must establish that the factors supporting transfer predominate." *Senador Int'l, Inc. v. King Bros. Indus.,* 181 F.Supp.2d 51, 52 (D.P.R.2002) (*citing Cianbro,* 814 F.2d at 11).

The defendant usually satisfies the first requirement if it demonstrates "that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there." *Mercier,* 935 F.2d at 424 (*citing Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252). Here, the Georgia district court is qualified to hear contractual disputes. Moreover, Kemiron is also amenable to service of process in Georgia, since that is its principal place of business. (Docket No. 1.)

The second requirement requires the defendant to show "that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal," or transfer, as in this case. *Iragorri v. International Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir.2000) (*citing Mercier,* 935 F.2d at 424). In other words, this second prong asks the Court to "consider whether the balance of convenience and judicial efficiency favors litigating the claim in the alternative forum." *Mercier,* 935 F.2d at 424 (*citing Piper Aircraft,* 454 U.S. at 256 & n. 23, 102 S.Ct. 252). "The district court should undertake this inquiry mindful that the *forum non conveniens*

doctrine's principal purpose is to ensure that trials are convenient, both for the parties and for the court." *Id.*

Here, Kemiron, argues that since it filed suit in Georgia first, transfer is proper because there would otherwise be duplicative litigation. *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir. 1977) (stating that first-filed rule is a sound one in most circumstances). Kemiron also argues that Caribe's claims concerning the PSA have their "center of gravity" and most significant contacts in Georgia. (Docket No. 8 at 20.) For example, the delivery and pick up of chemicals took place in Georgia, where business was also often physically transacted. (*Id.* at 28.) Finally, Kemiron maintains that its contacts in Puerto Rico are not significant, and that it would be much more inconvenient for it to have these claims heard in Puerto Rico than for Caribe to have its claims heard in Georgia. (*Id.* at 29.)

In response, Caribe argues that even if the Court wanted to transfer the case, it could not, since the Georgia court would have no personal jurisdiction over it. Caribe further contends that the two actions involve unrelated claims. (Docket No. 10a at 1.) Furthermore, Caribe claims that since the cases do not fully overlap, there is no possibility of inconsistent judgments. *Id.*

Caribe's jurisdictional argument lacks merit. A finding of general jurisdiction "depends largely on whether a corporate party carried on 'continuous and systematic' activities within the forum sufficient to justify requiring it to answer there to a claim. . . ." *Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 88–89 (1st Cir.1990) (*citing Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Caribe and Kemiron often transacted business deals in Georgia. (Dockets No. 8 & 10.) Accordingly, that

court has personal jurisdiction over both parties.

Caribe correctly cites *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1 (1st Cir.1996), for the proposition that "[w]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." *Id.* at 4 (*citing West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir.1985)). Nonetheless, *TPM Holdings*, also states that when the overlap is *not* complete, the Court must decide on a case-by-case basis, "based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Since § 1404 provides for a transfer on convenience grounds, the Court must engage in a balancing test. *See Mercier*, 935 F.2d at 424. On balance, the Court finds that the factors supporting transfer predominate. *See Cianbro*, 814 F.2d at 11. First, the overlap here is substantial, since the same contract, the PSA, is at issue. Caribe claims Kemiron wrongfully cancelled the PSA, which was essential to its distribution of Kemiron's goods in Puerto Rico. (Docket No. 1 at 4.) In the Georgia litigation, Kemiron avers that it properly cancelled the contract because Caribe owed it money pursuant to the PSA (and its subsequent amendments). (Docket No. 8 at 12.) The close relation between the two suits, the Court finds, justifies transfer pursuant to § 1404(a).

Second, the Georgia action was filed first, and there is case law strongly favoring the forum where suit was first-filed. *Mercier*, 935 F.2d at 424; *Coady*, 223 F.3d at 4. Furthermore, Caribe will not be inconvenienced as far as its Law 75 claims

are concerned; the transferee Court will resolve them pursuant to Puerto Rico law. *See Palmer v. Radisson Hotel Intern.*, 45 F.Supp.2d 162, 165 (D.P.R.1999) (*citing Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990)). It appears that Caribe was not greatly inconvenienced in the past by traveling to Georgia and Florida to conduct business. Finally, as far as the documents go, judging from the docket, Caribe has not shown that the amount of documents warrants denying the motion to transfer. *See Cianbro*, 814 F.2d at 11. The Court concludes that the case should be transferred to the Southern District of Georgia.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to transfer and DENIES the motion to dismiss or to stay.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of August, 2002.