**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0696, <u>Michael J. Walsh, Trustee v. Sydney H. Walsh, Trustee</u>, the court on August 21, 2018, issued the following order:**

The following order, originally issued on August 9, 2018, is being reissued to correct errors in two dates identified in the narrative portion of the August 9 order. The dates that have been corrected appear below in the first sentence of the last paragraph on page 3, and in the first sentence of the first paragraph on page 4.

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, Michael J. Walsh, appeals an order of the Circuit Court (<u>King</u>, J.) removing him, upon an <u>ex</u> <u>parte</u> motion of the respondent, Sydney H. Walsh, as a co-trustee with her of a trust. He argues that the trial court unsustainably exercised its discretion because: (1) the order will effectively remove him from property owned by the trust and allegedly allow the respondent, as sole trustee, "to alienate the property for any amount she wishes without regard to [his] reliance interests or the interests of the beneficiaries"; (2) the respondent, as sole trustee, will "purport to execute a warranty deed on behalf of the same trust she seeks to have declared void, and to convey property that she actively seeks to revert to herself, individually"; and (3) removing him as co-trustee is allegedly inconsistent with the trust.[1]

The record reflects the following facts. Although the parties participated in a religious marriage ceremony in 2004, they did not seek or obtain a civil marriage license. In 2007, the petitioner, an attorney admitted to practice law in the Commonwealth of Massachusetts, prepared instruments, which the respondent executed, creating an irrevocable trust and conveying to it certain

---

[1] The petitioner also raises, purportedly as "plain error," several questions that we earlier dismissed as an improper interlocutory appeal. Regardless of whether the petitioner brought those issues to the attention of the trial court, <u>see</u> <u>Sup. Ct. R.</u> 16-A (allowing this court to consider a plain error affecting substantial rights even though it was not brought to the attention of the trial court or supreme court), we dismissed those questions because they were not properly before us in this appeal, and we reject the petitioner's attempt to circumvent our dismissal order by labeling the questions as "plain error." Accordingly, we decline to address the issues that the petitioner labels as "plain error" in his brief and limit our review to those issues addressing his removal as trustee that we accepted in our order of January 16, 2018.

residential property in Troy.  At that time, the respondent, but not the petitioner, had an ownership interest in the Troy property.  Shortly thereafter, the respondent executed an instrument, which the petitioner had also prepared, appointing the petitioner as co-trustee, and providing that he was "deemed to be in joint possession of all trust property, including realty."

The petitioner filed the present action on July 28, 2016, asserting that the parties' relationship had deteriorated, and that the respondent sought to sell the Troy property and divide the proceeds in a manner that was inconsistent with the trust.  He requested that the trial court enjoin the respondent from selling the property and dividing the sale proceeds in a manner that he claimed she had proposed, and from otherwise encumbering the property.  He further requested the court, "if it deems it prudent or necessary, . . . [to] appoint a Master to oversee the listing, sale and application of sale proceeds," and to divide the proceeds equally into two new trusts, each governed by the same terms as the original trust, and with each party being appointed a trustee of one of the new trusts.  At no point in the petition did the petitioner request specific performance of any agreement to transfer the property or any unique chattel.  Nevertheless, on the same day that he filed his petition, he caused a notice of lis pendens referencing the matter to be recorded in the Cheshire County Registry of Deeds, claiming that "the specific performance of an agreement (trust) is under litigation."  But see RSA 511-A:8, III (2010) (authorizing litigant to file lis pendens in registry of deeds without prior application to the court and notice to the defendant only in "equity cases for specific performance of an agreement to transfer land or a unique chattel," or in cases seeking to perfect a labor and materials lien); TPM Holdings, Inc. v. Intra-Gold Industries, Inc., 91 F.3d 1, 4-5 (1st Cir. 1996) (upholding federal court decision invalidating notice of lis pendens under RSA 511-A:8, III on the basis that there was no claim seeking specific performance of an agreement to transfer land or a unique chattel at the time the lis pendens was filed).

The respondent filed an answer and counterclaim on October 5, 2016.  In her counterclaim, the respondent requested that the trial court set aside "the Trust interest in the real estate . . . and [declare] the real estate . . . to be the sole property of [the respondent] disencumbered of any claim by [the petitioner] and/or" the trust, asserting that the petitioner had taken advantage of his position and relationship with her when he created the trust.

During the litigation, the petitioner, but not the respondent, resided at the property, and the parties were not paying all of the property's carrying costs.  Ultimately, they agreed to sell the property, and entered into a purchase and sale agreement with a third party.  Under the terms of the agreement, the closing was to occur on or before November 30, 2016, and the parties were obligated to make a good faith effort to correct any title defect identified upon a title examination.

At a motions hearing on November 3, 2017, the parties notified the trial court of the purchase and sale agreement, and that, other than a contingency granting the purchaser until November 13 to secure financing, all required conditions under the agreement had occurred. During a separate colloquy addressing a motion to dismiss the respondent's counterclaim on statute of limitations grounds, the petitioner suggested that the respondent's challenge to the legitimacy of the trust called into question the validity of the purchase and sale agreement, and he asserted that she could not "just erase the trust, . . . and the deed, and this purchase and sale agreement that we both signed as trustees." At that point, the trial court interjected, stating that "I don't think there's a dispute that the trust holds legal title and has the ability to sell it. . . . How the money gets divvied up, whatever is left is – I mean, clearly, under the current situation, it doesn't go to either party in this lawsuit because of trust assets." The trial court then suggested that, if the closing were to occur, it would order the proceeds to be held in escrow pending its decision. Counsel for the respondent expressly agreed with the trial court's statements.

On November 7, 2017, the trial court issued an order denying the petitioner's motion to dismiss the counterclaim. Subsequently, counsel for the title company requested that the petitioner discharge his notice of lis pendens, advising that the petitioner could not convey clear title with the pending lis pendens. On November 22, the petitioner refused, asserting that the counterclaim, and not the lis pendens, was the title defect because, he claimed, if the respondent prevailed on her counterclaim, title would revert to her. He further asserted that, because the trial court had denied his motion to dismiss, only the respondent could address the title issue by dismissing her counterclaim, and that he would release the lis pendens only if the respondent dismissed her counterclaim with prejudice. He similarly told the parties' broker, after the broker had advised that the purchaser's lender had issued a "clear to close" notice, that the deal could not close because of the lis pendens, and that the respondent "holds the key to this problem. All she has to do is dismiss the counterclaim and this deal can go forward. If she dismissed her counterclaim (with prejudice) I'd remove the" notice of lis pendens.

Finally, on November 26, 2017, the petitioner sent a three-page letter on his law office letterhead to the purchaser, advising the purchaser that: (1) the counterclaim was "the title issue that will prevent the closing from taking place this week"; (2) because of the lis pendens, any buyer of the property would take the property subject to the outcome of the suit; (3) if the respondent prevailed on her counterclaim, any deed to the purchaser would be void; and (4) unless the respondent voluntarily dismissed her counterclaim, the purchaser and his lender "would be foolish to proceed" with the transaction. The petitioner expressed to the purchaser his hope that the respondent could "be prevailed upon and persuaded to dismiss her counterclaim . . . so that the property can be sold and financed."

3

The respondent filed the present ex parte motion on November 27, 2017, arguing that the petitioner's actions reflected a "clear purpose to thwart the closing." She requested that the court remove the petitioner as trustee, discharge the lis pendens, authorize her to complete the transfer of the property on behalf of the trust, and order that the net proceeds from the sale be deposited into an escrow account. The petitioner objected, maintaining that the lis pendens was required to satisfy his obligation to give potential purchasers notice of the alleged title defect presented by the counterclaim.

At a hearing on the motion, when the trial court pressed the petitioner to identify who might seek to void the transaction after-the-fact on the basis of a judgment in the respondent's favor, he responded, "I cannot exclude any possibilities. I cannot give you someone who I don't know yet, but it's there. It's a real title risk." The trial court then observed:

> I think both parties in this case, for many months, have agreed that the assets of the trust are real estate today, can be liquidated because there is no money to pay the ongoing expenses. You're living there rent free. It's not generating any income. So it's either we liquidate it and we fight over the proceeds or we lose the assets of the trust. That's where we've been for months. We now have a deal that's ready to close at full listing price, and you can fight over the proceeds later. But I'm telling you right now, if this doesn't go through and the trust suffers damages, whether it's additional taxes, you lose the buyer and it sells at much reduced price, you're likely to be on the hook for all of those damages.

The petitioner responded that "the way this deal goes through . . . is to dismiss the counterclaim."

At that point, the trial court gave the petitioner the option of either voluntarily discharging the lis pendens, or requiring the court to issue an order to that effect. When the petitioner claimed that he could not ethically execute a discharge of the lis pendens, the trial court ruled from the bench that the lis pendens was discharged, and that the petitioner was removed as a trustee. With respect to the petitioner's removal as trustee, the trial court specifically ruled that his "position . . . taken here this morning" amounted to a "lack of cooperation among co-trustees [that] substantially impair[ed] the administration of the trust" for purposes of RSA 564-B:7-706(b)(2) (2007).

Consistent with its bench ruling, the trial court issued a written order in which it specifically found that the petitioner's refusal to discharge the lis pendens was "wholly in bad faith," that he offered no good reason for refusing to discharge the lis pendens, and that his "primary objective . . . was to force [the respondent] to withdraw, with prejudice, her" counterclaim. The trial court observed that the petitioner had "long-agreed to the sale of the property"

4

in the litigation, and had "executed a purchase and sale agreement in which he pledged to make a good faith effort to correct any title defect." The court further observed that the petitioner's argument for why he could not execute a discharge "would carry more weight with the Court had he raised this concern during the pendency of this long litigation, prior to signing a valid purchase and sales agreement, and not at the eleventh-hour, just before a scheduled closing." Finally, the trial court noted that if the closing were not to occur, the trust was at risk of financial loss because "there are no liquid assets to bear the carrying costs of" the property. This appeal followed.

We review the trial court's decision to remove the petitioner as a co-trustee pursuant to RSA 564-B:7-706 (2007) for an unsustainable exercise of discretion. See Shelton v. Tamposi, 164 N.H. 490, 505 (2013). In reviewing the trial court's exercise of discretion, "we are really deciding whether the record establishes an objective basis sufficient to sustain" the trial court's discretionary judgment. State v. Lambert, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To establish that the trial court unsustainably exercised its discretion, the petitioner must demonstrate that its ruling was clearly untenable or unreasonable to the prejudice of his case. Id. The trial court's findings of fact "are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2007).

As the appealing party, the petitioner has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the petitioner's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the petitioner has not demonstrated reversible error. See id. To the contrary, on this record, we conclude that the trial court's decision to remove the petitioner as trustee pursuant to RSA 564-B:7-706 was well within its discretion.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**

5